UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMILIO RAMOS,

          Petitioner:

    v.

UNITED STATES OF AMERICA,

          Respondent:

Civil No. 04-11731-DPW
Civil No. 98-11857-DPW
(Crim. No. 93-10253-WD)

SCANNED
DATE: 12/3/04
BY: RN

PETITIONER'S REQUESTING LEAVE OF COURT TO AMEND AND/OR REPLY
TO THE GOVERNMENT'S OPPOSITION

COMES NOW, the instant Petitioner, Emilio Ramos, pro-se (Hereinafter, "Petitioner"), and hereby replies to the Government's Opposition as follows:

Statute of Limitations

Antiterrorism and Effective Death Penalty Act of 1996

First, Petitioner's claims should be equably tolled based upon his counsel of record's absolute failure pursuant to Cronic* to file a requested timely notice of appeal; the fact which is undisputed that when the Petitioner's conviction became final in 1995, the instant Petitioner had an "unlimited time within which to file a motion pursuant to 28 U.S.C. § 2255, so the Antiterrorism and Effective Death Penalty Act of 1996 doesn't apply to him in the first place, as it would involve an Ex-Post Facto application which is unconstitutional. Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 1499 (1994). This is further supported by the fact of the Supreme Court's decision in Lindh v. Murphy, (citations omitted) (which clarified the temporal reach of the newly enacted AEDPA, holding that amendments to the Habeas Corpus statute by the

AEDPA <u>do not apply to pending non-capital cases on collateral review.</u>)  Therefore, both the Government's argument in its filed opposition and this District Court's June 5, 2000 memorandum, are either contrary to clearly established Federal Law as determined by the Supreme Court of the United States or a misapplication of clearly established Federal Law.

**Second,** the instant Petitioner, pursuant to the Supreme Court's precedent of <u>Roe v. Flores-Ortega</u>, (citations omitted) avers that contrary to the Government's argument in its opposition, he has more than met and/or established that Attorney At Law, Michael Avery, (or his associate Jennifer Meyerhardt) was **constitutionally** and statutorily ineffective for not conferring with him following his January 17, 1995 sentencing about whether or not he wanted to file a timely notice of appeal from his conviction and sentence imposed. Please see, Evidentiary Hearing Transcript, dated May 12, 2000, at Page 15 for your information, review and consideration, attached as Exhibit I.

**Third,** Elizabeth Prevett, Esquire, Assistant Federal Public Defender, was never given permission by the Petitioner nor his verbal and/or written consent to dismiss the Petitioner's § 2255 proceedings in Civil Action No. 98-11857-DPW (Criminal No. 93-10253-WD).

**Fourth,** the Petitioner wasn't even arrested in the possession of any known narcotic drugs; especially heroin, nor was the Petitioner arrested with any guns. In fact, the Petitioner was arrested in New York City on September 29, 1993, almost three years after the charged offense to which he plead guilty to Count 3 of the indict-

2.

**Page 13**

1  little bit more about what transpired he issue -- let
2  me tell you how I see the issue, although I gather you
3  have read my memorandum concerning this here.
4    MR. RAMOS: Yes.
5    THE COURT: The issue arises -- that you raised
6  arises if you made some effort to have your lawyer during
7  the period in which you could appeal consult with you
8  about what the grounds for the appeal are.
9    I will have a transcript prepared of the
10 conversation that we had earlier today with Mr. Avery.
11 But I think I can tell you that what he said was that he
12 has no specific recollection of the conversations there;
13 that his assistant, Ms. Myerhart, had wrote a letter to
14 you on January 18th, 1995, advising you further about what
15 the sentence was, but that there was no indication at that
16 time in the letters, anyway, --
17   MR. RAMOS: Right.
18   THE COURT: -- that there was a desire to
19 appeal; that the desire to appeal in the letters, anyway,
20 and communications didn't first occur until May of 1995.
21   And, so, it is of some interest to me whether or
22 not there was such a conversation immediately after the
23 sentence itself was imposed in which you made some inquiry
24 about what your appeal rights are and what you could do.
25   MR. RAMOS: Yes.

**Page 14**

1    THE COURT: The submissions that you made make
2  reference to a phrase "good luck on your appeal." That
3  phrase does appear in one of Ms. Myerhart's letters here.
4    MR. RAMOS: Right.
5    THE COURT: But let me go back then. Did you
6  have a conversation with Mr. Avery or Ms. Myerhart or
7  someone associated with Mr. Avery within the 10 days after
8  the sentence was imposed indicating in some fashion your
9  desire to appeal that case at that time?
10   MR. RAMOS: No, I didn't because I had -- when I
11 was getting sentenced, I had asked him "are you going to
12 fight the two-point enhancement?" And he had told me "I
13 don't want to bring it up because I think if we fight it,
14 it might affect your sentence." So, then I didn't even
15 bring it up, you know. I didn't bother him no more about
16 it. But then later on, I learned that even if I would
17 have had fight it or fought it, it would not have affected
18 my sentence. You know, I was like illiterate to the rules
19 and regulations. I didn't know how none of that would
20 affect me.
21   THE COURT: Right, right. But if I can
22 understand, you had a conversation with him before the
23 sentencing about, you know, how the Sentencing Guidelines
24 were going to work and whether or not there would be a
25 two-point enhancement for the --

MAY 12, 2000

**Page 15**

1    MR. RAMOS:  ;. He had explained that to me.
2  But when I got sentenced, it was like a spirit of the
3  moment. Like I asked him, "Are you going to fight the
4  two-point enhancement," you know, because we had spoke on
5  that. Before I got sentenced, we had spoke all about that
6  and he said he's going to try to fight it at court.
7    THE COURT: Yes.
8    MR. RAMOS: And then when I bring it up again at
9  sentencing, he said, "I don't think we should touch that.
10 I think you should just let it go and just, you know,
11 leave it like you were doing it and don't touch it because
12 it might affect your sentence."
13   THE COURT: So that was a conversation
14 immediately before the sentence?
15   MR. RAMOS: No. That occurred at sentencing.
16   THE COURT: At the time of the sentencing --
17   MR. RAMOS: Yes.
18   THE COURT: -- while we were having the hearing
19 on the sentencing?
20   MR. RAMOS: Right. This was like a conversation
21 between us two, you know, not out loud at sentencing.
22   THE COURT: Right. Now, I want to focus on the
23 time period after the sentence is imposed. That is --
24   MR. RAMOS: Oh, okay.
25   THE COURT: -- after I've entered the judgment,

**Page 16**

1  the piece of paper that says that you're sentenced to the
2  particular sentence. Did you have a conversation with him
3  then?
4    MR. RAMOS: Okay. I had spoke to him by phone
5  and I wrote him a letter stating if he could help me out
6  and represent me on appeal. And he had told me, "I can no
7  longer represent you, you're going to have to find another
8  lawyer to represent you and, you know, good luck on your
9  appeal."
10   THE COURT: Now, when did that conversation or
11 that letter or correspondence take place; do you recall?
12   MR. RAMOS: I believe it was in '95. I've got
13 no indication of exact date. But like you said, you've
14 seen that on one of the letters --
15   THE COURT: Right.
16   MR. RAMOS: -- when he said "good luck on your
17 appeal." But that letter somehow, through me moving
18 or transferring from one place or another, it got lost.
19   THE COURT: Okay. I guess for my legal
20 purposes, the focus has to be on that 10-day period
21 between my actually entering the order and what is the
22 end of the regular appeal period.
23   MR. RAMOS: Okay.
24   THE COURT: And I take it that during that
25 particular time period, you did not have a conversation

# CERTIFICATE OF SERVICE

I, __Emilio Ramos_____, hereby certify that I have served a true and correct copy of the foregoing:

"Petitioner's Requesting Leave To amend And/Or Reply to the Government's Opposition"

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, <u>Houston vs. Lack</u>, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

Hon. Judge Douglas P. Woodlock
United States Courthouse
John Joseph Moakley
One Courthouse Way
Boston, MA 02210

UNITED STATES DISTRICT ATTORNEY'S OFFICE
Robert L. Peabody AUSA
U.S. Courthous, John Joseph Moakley
1 Courthouse Way, Suite 9200
Boston, MA 02210

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this __15th__ day of __November__, 2004.

Respectfully Submitted,

_Emilio Ramos_ (signature)
Emilio Ramos

REG. NO. __35179-054__
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA 17837